IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 24-00078 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS NEDDLES KEIKILA JUNIOR | ) | |
| MANAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR A
<u>FRANKS</u> HEARING (ECF No. 40)**

On November 21, 2024, the grand jury returned an Indictment charging Defendant Douglas Neddles Keikila Junior Manago with:

**Count I:** <u>Possession With Intent To Distribute A Controlled Substance</u>, 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A);

**Count II:** <u>Felon In Possession Of A Firearm</u>, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8);

**Count III:** <u>Addict And User In Possession Of A Firearm</u>, in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(8);

**Count IV:** <u>Possession With Intent To Distribute A Controlled Substance</u>, 5 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).

(Indictment, ECF No. 17).

Defendant Manago moves to suppress all evidence recovered as a result of the execution of two search warrants. The search warrants were issued following traffic stops for vehicles

1

Defendant Manago was driving on October 2, 2024 ("First Stop") and October 24, 2024 ("Second Stop").

Defendant also requested an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

First, Defendant argued that the Government made a false statement in the Affidavit for Search Warrant submitted on October 21, 2024 for the First Stop.  The October 21, 2024 Affidavit asserted there was probable cause to search the 2010 maroon colored Nissan Altima that Defendant was driving on October 2, 2024.

The Affidavit stated that an officer at the First Stop on October 2, 2024, observed a glass pipe with a crystalline substance in plain view located in the center cup holder of the vehicle.  The Affidavit contained a photograph of the glass pipe. Defendant Manago argued that there was no glass pipe in the photograph.

Second, Defendant argued that the Government also made a false statement in the Affidavit for Search Warrant submitted for the Second Stop on October 25, 2024.  The October 25, 2024 Affidavit asserted there was probable cause to search the 2020 black Toyota Tacoma truck that Defendant was driving at the Second Stop on October 24, 2024.

The Affidavit stated that an officer at the Second Stop on October 24, 2024, observed a glass pipe with a crystalline

substance in plain view located in an open bag on the passenger's seat of the truck.  Defendant Manago argues that the glass pipe with a crystalline substance was not in plain view because the windows were tinted and the truck was lifted.

The Court conducted a hearing on the Motion to Suppress to allow testimony from the Honolulu Police Officer who stated that he saw the glass pipe during the First Stop on October 2, 2024. The HPD Officer testified that he saw the glass pipe in plain view in the center console.  The officer identified the location of the glass pipe in the photograph that was taken at the scene and was submitted with the October 21, 2024 Affidavit for the search of the Altima.

The Parties did not call any additional witnesses.

Upon review of the Parties' filings and the arguments made at the hearing, the Court finds that the Affidavits on their face established probable cause.  The statements in the Affidavits and the photographs submitted with the Affidavits demonstrate the glass pipes were in plain view of the officers at both the First Stop on October 2, 2024 and the Second Stop on October 24, 2024.

Defendant is not entitled to a <u>Franks</u> hearing.  Defendant has not made a substantial preliminary showing that the Affidavits contained deliberate or reckless misrepresentations.

Defendant's Motion to Suppress and Request for a <u>Franks</u> Hearing (ECF No. 40) is **DENIED.**

3

## INDICTMENT

Defendant Manago is charged in the **Indictment** filed on November 21, 2024 (ECF No. 17) as follows:

**Count I:  Possession With Intent To Distribute A Controlled Substance (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A))**

On or about October 2, 2024, within the District of Hawaii, DOUGLAS NEDDLES KEIKILANI JUNIOR MANAGO, the defendant, did knowingly and intentionally possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

**Count II: Felon In Possession Of A Firearm (18 U.S.C. §§ 922(g)(1), 924(a)(8))**

On or about October 2, 2024, within the District of Hawaii, DOUGLAS NEDDLES KEIKILANI JUNIOR MANAGO, the defendant, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing that he had been convicted of such a crime, did knowingly possess in and affecting interstate commerce a firearm, with said firearm having been previously shipped and transported in interstate commerce. All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

**Count III: Addict And User In Possession Of A Firearm (18 U.S.C. §§ 922(g)(3), 924(a)(8))**

On or about October 2, 2024, within the District of Hawaii, DOUGLAS NEDDLES KEIKILANI JUNIOR MANAGO, the defendant, an unlawful user of and addicted to any controlled substance, did knowingly possess in and affecting interstate commerce a firearm, with said firearm having been previously shipped and transported in interstate commerce.  All in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8).

4

**Count IV: Possession With Intent To Distribute A Controlled Substance (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B))**

> On or about October 24, 2024, within the District of Hawaii, DOUGLAS NEDDLES KEIKILANI JUNIOR MANAGO, the defendant, did knowingly and intentionally possess with intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## PROCEDURAL HISTORY

On October 28, 2024, a criminal complaint was filed against Defendant Manago.  (ECF No. 1).

On November 8, 2024, the Government filed a Motion to Detain Pending Trial.  (ECF No. 5).

On November 12, 2024, the Federal Public Defender's Office was appointed to represent Defendant and he made an initial appearance before the Magistrate Judge.  (ECF No. 8).

On November 15, 2024, the Federal Public Defender's Office filed a Motion to Withdraw as Attorney.  (ECF No. 11).

Also on November 15, 2024, the Magistrate Judge held a hearing on the Motion to Detain.  (ECF No. 13).  The Motion to Detain was denied.  (Id.)

On November 20, 2024, the Magistrate Judge held a hearing on the Motion to Withdraw as Attorney, which was granted.  (ECF No. 15).

On November 21, 2024, Attorney Catherine Gutierrez was

5

appointed as counsel for Defendant.  (ECF No. 16).

Also on November 21, 2024, the grand jury returned the four-count Indictment.  (ECF No. 17).

On November 25, 2024, Defendant Manago pled not guilty to Counts 1-4 of the Indictment.  (ECF No. 22).  Trial was set for January 22, 2025.  (Id.)

On December 6, 2024, the Court granted the Parties' FIRST STIPULATION AND ORDER CONTINUING TRIAL AND EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT.  (ECF No. 24).  Trial was continued to April 8, 2025.  (Id.)

On February 6, 2025, Attorney Catherine Gutierrez filed a Motion to Withdraw as Counsel.  (ECF No. 26).

On February 13, 2025, Attorney Gutierrez's Motion to Withdraw as Counsel was granted.  (ECF No. 33).  Attorney Birney Bervar was appointed as counsel to represent Defendant.  (ECF No. 36).

On March 11, 2025, the Court held a Status Conference.  (ECF No. 39).  At the hearing, Attorney Bervar requested to withdraw as counsel.  (Id.)  After discussion, Defendant and Attorney Bervar agreed that Attorney Bervar would continue as counsel. The Court granted Defendant's request to continue trial.  Trial was continued from April 8, 2025 to November 18, 2025.  (Id.)

On September 22, 2025, Defendant Manago filed a MOTION TO SUPPRESS EVIDENCE.  (ECF No. 40).  Defendant also filed a MOTION

FOR RETURN OF PROPERTY, requesting his Apple phone that was seized at the time of his October 24, 2024 arrest be returned to him.  (ECF No. 41).

On September 29, 2025, the Court held a Status Conference and scheduled the Motion to Suppress and Motion for Return of Property for a hearing on October 23, 2025.  (ECF No. 45).

On October 23, 2025, the Court held a hearing on Defendant's Motion to Suppress and Motion for Return of Property.  (ECF No. 53).

At the hearing, the Court denied Defendant's Motion for Return of Property (ECF No. 41).  (ECF No. 53).

### BACKGROUND

**FIRST STOP:**
**October 2, 2024 Traffic Stop And Subsequent Search Warrant For The Maroon 2010 Nissan Altima**

On October 2, 2024, at approximately 11:55 p.m., Defendant was driving a 2010 maroon colored Nissan Altima.  Meldrick Lagua was seated in the front passenger seat.  Mr. Lagua was a suspect in a misdemeanor theft case.

**Traffic Stop Of The Nissan Altima Driven By Defendant For Failing To Stop At A Stop Sign**

Honolulu Police Officer Timothy Brown, who was assigned to the District 3 Crime Reduction Unit, was on duty.  Officer Brown was operating in a plain clothes capacity in an unmarked

7

undercover vehicle.  Officer Brown observed that the Altima driven by Defendant failed to stop at a stop sign.  The Affidavit submitted in support of the search warrant explained that both the FBI and the Honolulu Police Department were conducting a criminal investigation into Defendant Manago and Mr. Lagua for drug trafficking offenses.

After Officer Brown observed Defendant make the traffic violation, he requested a nearby officer in a marked Honolulu Police Department blue and white vehicle to assist in conducting the traffic stop of the Altima.  Honolulu Police Officer R. Newcom conducted the traffic stop of the Altima.

Defendant Manago does not dispute that there was a valid legal basis to stop the vehicle.

Officer Brown approached the vehicle and spoke to Defendant Manago.  Officer Brown went back to his unmarked vehicle to make checks on information Defendant Manago provided to him when Honolulu Police Officer Russel Botelho arrived at the scene.

**Officer Botelho Arrested Passenger Meldrick Lagua On Pending Theft Charge**

Officer Botelho was assigned to the District 3 Crime Reduction Unit and was also in plain clothes.  When he arrived at the scene, Officer Botelho recognized both Defendant Manago and Mr. Lagua.  Officer Botelho knew that Mr. Lagua was wanted for a pending theft charge.

Officer Botelho approached the passenger side of the vehicle and informed Mr. Lagua that he was under arrest for the theft charge.  Mr. Lagua exited the vehicle and placed a black backpack on the front passenger seat.

### Officers Observe Narcotics In Passenger Lagua's Backpack

While Officer Botelho was placing Mr. Lagua in handcuffs, Honolulu Police Officer Eric Castro observed the top zipper of the black backpack that Mr. Lagua had placed on the front passenger seat was open.  Officer Castro observed illegal narcotics in plain view in the black backpack.  Officer Castro informed Officer Botelho that he had observed the illegal narcotics in plain view in the black backpack.

Officer Botelho approached the open passenger door of the vehicle.  He observed Ziploc type baggies containing a white rocky-like substance that resembled methamphetamine in the open pocket of the black backpack on the seat.

Officer Botelho then removed the backpack from the vehicle and checked with his flashlight to determine if other narcotics were visible in plain view in the vehicle.

### Officer Botelho Observed A Large Glass Pipe In The Center Console Of The Altima In Plain View

Officer Botelho shined his flashlight in the Altima and observed a large glass pipe containing a crystalline substance in

9

the center console.  Officer Botelho testified at the hearing that the large glass pipe was located directly in front of the shifter and below the air conditioning controls.  Officer Botelho described the glass pipe as a "meth pipe" based on his training and experience.

Officer Botelho identified the photograph that was taken at the scene of the front seat of the Altima from the passenger side window.  (Affidavit in Support of Search Warrant Dated October 21, 2024 at p. 14, Gov't Ex. 1).  Officer Botelho electronically circled the location of the glass pipe on the photograph in the Exhibit during the hearing and it was preserved for the record.

Officer Botelho explained that he described the location as the "center console" and that it was located within arms reach of both Defendant Manago and Mr. Lagua from where they were seated in the front seats of the vehicle.

After Officer Botelho observed the glass pipe, Defendant Manago was placed under arrest for Promoting Dangerous Drugs in the Third Degree.  The glass pipe was left in the vehicle and the vehicle was seized, secured, and towed to the police station pending application for a search warrant.

**October 4, 2024 State Search Warrant For Black Backpack**

On October 4, 2024, Honolulu Police Officers obtained and executed a State of Hawaii search warrant on the black backpack

10

that had been placed on the front passenger seat by Mr. Lagua.
The search of the black backpack pursuant to the search warrant
resulted in the seizure of Ziploc baggies containing
methamphetamine.

**October 21, 2024 Federal Search Warrant**

On October 21, 2024, FBI Special Agent Margaret Blanton
obtained a federal search warrant as a result of the officers'
observations at the First Traffic Stop on October 2, 2024.

The Affidavit states that the basis for probable cause to
search the 2010 maroon Nissan Altima included:

(1)  the information related to the October 2, 2024 traffic
     stop;

(2)  the arrest of Mr. Lagua for theft;

(3)  the officers' plain view observations of the Ziplock
     baggies in the open black backpack;

(4)  Officer Botelho's observation of the glass pipe with
     the crystalline substance in the Altima;

(5)  the recovery of the illegal narcotics and paraphernalia
     from the execution of the State of Hawaii Search
     Warrant on the black backpack.

(Affidavit in Support of Search Warrant Dated October 21, 2024 at
pp. 11-17, Gov't Ex. 1).

**Execution Of The October 21, 2024 Federal Search Warrant
Recovered Evidence of Drug Trafficking And A Firearm**

The Magistrate Judge signed the Application for Search

11

Warrant on October 21, 2024.

As a result of the execution of the October 21, 2024 federal search warrant, officers recovered a brown Michael Kors backpack from the Altima that contained a black wallet with Defendant Manago's Hawaii driver's license, credit cards, health insurance cards, and checks bearing his name.

The brown backpack contained more than 50 grams of pure methamphetamine, two scales, multiple empty clear Ziplock baggies, and a black Colt 1911 pistol.  The evidence recovered from the brown Michael Kors backpack forms part of the evidentiary basis for Counts 1-3 in the Indictment.

Defendant Manago seeks to suppress the evidence.  Defendant Manago challenges the probable cause for the search of the Altima.  Defendant disputes that the glass pipe in the front center console was in plain view of Officer Botelho on October 2, 2024.  Defendant claims there is no visible glass pipe in the photograph submitted in the October 21, 2024 Affidavit in Support of Search Warrant.

**SECOND STOP:**
**October 24, 2024 Traffic Stop And Subsequent Search Warrant For Black 2020 Toyota Tacoma, White iPhone, and Defendant Manago's Person**

On October 24, 2024, at approximately 2:12 a.m., Defendant Manago was driving a black 2020 Toyota Tacoma truck which had no safety check sticker and had excessively dark tinted windows in

12

violation of Hawaii State laws.

**Traffic Stop Of The Toyota Tacoma Truck Driven By Defendant For Operating Vehicle Without A Safety Check Sticker And For Excessively Dark Tint On The Windows**

Honolulu Police Officer Jeffrey Chun was a plain clothes officer assigned to the District 5 Crime Reduction Unit.  Officer Chun was conducting patrol when he noticed Defendant driving the truck without a safety check sticker and with excessively dark tinted windows.  Officer Chun conducted a traffic stop of the black 2020 Toyota Tacoma truck.

Defendant Manago does not challenge that there was a valid legal basis for the traffic stop.

**Defendant Manago Had An Outstanding Warrant For His Arrest**

Defendant Manago was the driver and sole occupant of the 2020 black Toyota Tacoma truck.  Law enforcement checks revealed that Defendant Manago had an outstanding warrant for his arrest.

Officer Chun ordered Defendant Manago to exit the vehicle. Defendant Manago opened the driver's side door and stepped out of the vehicle.

**Officer Chun Observed A Large Glass Pipe On Top Of A Bag On The Passenger's Seat In Plain View In The Truck**

Officer Chun scanned the interior of the truck and observed a glass pipe containing white and brown colored residue that was

13

located on top of an opened zipper bag next to a pair of black binoculars.  Officer Chun recognized the pipe as one commonly used to smoke methamphetamine.

Officer Chun is approximately 6 feet 4 inches tall and, through the open door, he was able to see the pipe resting on the bag.  Although the truck was lifted, he was able to see clearly because of his height.  Officer Chun observed the pipe from approximately 4 feet away while using his flashlight.  The interior lights of the vehicle were illuminated.  A photograph shows the glass pipe in plain view.  The photo was taken at the scene and included in the October 25, 2024 Affidavit for Search Warrant.  (Affidavit in Support of Search Warrant Dated October 24, 2024 at p. 26, Gov't Ex. 5).

Defendant Manago was arrested for both Promoting a Dangerous Drug in the Third Degree based on the glass pipe in plain view and his outstanding warrant for Criminal Contempt of Court.

The 2020 black Toyota Tacoma truck was seized, secured, and towed to the police station pending application for a search warrant.

**October 25, 2024 Federal Search Warrant**

On October 25, 2024, FBI Special Agent Margaret Blanton obtained a federal search warrant as a result of officers' observations at the traffic stops on both October 2, 2024 and

14

October 24, 2024.

The Affidavit states that the basis for probable cause to search the 2020 black Toyota Tacoma truck, a white Apple iPhone, and Manago's person for DNA, included:

(1)   the information related to the October 2, 2024 First Traffic Stop;

(2)   the arrest of Mr. Lagua for theft;

(3)   the officers' plain view observations of the Ziplock baggies in the open black backpack;

(4)   Officer Botelho's observation of the glass pipe with the crystalline substance in the Altima;

(5)   the recovery of the illegal narcotics and paraphernalia from the execution of the State of Hawaii Search Warrant on the black backpack;

(6)   the execution of the October 21, 2024 Federal Search Warrant for the First Stop that recovered Defendant's wallet, more than 50 grams of methamphetamine, drug distribution paraphernalia, and a black Colt 1911 pistol;

(7)   the information related to the Second Traffic Stop on October 24, 2024; and

(8)   Officer Chun's observation of the glass pipe with crystalline substance in the 2020 black Toyota Tacoma truck at the Second Stop.

(Affidavit in Support of Search Warrant Dated October 24, 2024 at pp. 17-28, Gov't Ex. 5).

**Execution Of October 25, 2024 Federal Search Warrant Of Toyota Tacoma Truck Recovers Evidence Of Methamphetamine**

The Magistrate Judge signed the Application for Search Warrant for the truck on October 25, 2024.

15

As a result of the execution of the October 25, 2024 federal search warrant, officers recovered more than 5 grams of pure methamphetamine from the 2020 black Toyota Tacoma.  The evidence recovered from the truck forms part of the evidentiary basis for Count 4 in the Indictment.

Defendant Manago seeks to suppress the evidence.  Defendant Manago challenges the probable cause for the search.  Defendant disputes that the glass pipe was in plain view of Officer Chun on October 24, 2024.

## STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

The Fourth Amendment requires law enforcement to have probable cause, and in most cases, to obtain a warrant issued by a court before searching or seizing property.  United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005).

A Magistrate Judge may issue a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location.  Illinois v. Gates, 462 U.S. 213, 238 (1983).

16

A Magistrate Judge's finding of probable cause is entitled
to great deference and the Court will not find a search warrant
invalid if the Magistrate Judge had a substantial basis for
concluding that the supporting affidavit established probable
cause.  United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.
1986).

A defendant has the burden of proof to establish a violation
of the Fourth Amendment pursuant to a motion to suppress.
Caymen, 404 F.3d at 1199.

**ANALYSIS**

**I.    Traffic Stops**

A traffic violation justifies a police officer making a
traffic stop to conduct a brief investigation of that violation.
United States v. Steinman, 130 F.4th 693, 703 (9th Cir. 2025)
(quoting Rodriguez v. United States, 575 U.S. 348, 354 (2015)).

Lawful inquiries incident to a traffic stop can include
checking a driver's license, determining if the driver or
passenger have outstanding warrants, and inspecting the vehicle's
registration or insurance.  Steinman, 130 F.4th at 703-04.

The Fourth Amendment to the United States Constitution
permits an officer to initiate a brief investigative traffic stop
based on reasonable suspicion.  Kansas v. Glover, 589 U.S. 376,
380 (2020).  Reasonable suspicion is a particularized and

objective basis for suspecting the particular person of criminal activity.  Id.  The reasonable suspicion standard is "not a particularly high threshold to reach."  United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013 (en banc).  Reasonable suspicion requires more than a mere hunch but it requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  Glover, 589 U.S. at 380.

An officer may always order a driver to exit his vehicle during a lawful traffic stop.  United States v. Ford, 2025 WL 2308093, *4 (S.D. Cal. Aug. 11, 2025) (collecting cases).

Defendant Manago does not dispute that there was reasonable suspicion to conduct the traffic stops on October 2, 2024 and October 24, 2024.

Defendant Manago does not challenge that officers had a lawful basis to order him to exit the 2010 maroon Nissan Altima at the First Stop on October 2, 2024.

Defendant Manago does not challenge that officers had a lawful basis to order him to exit the 2020 black Toyota Tacoma truck at the Second Stop on October 24, 2024.

## II.  Probable Cause Necessary To Support A Warrant

A valid search warrant must be supported by an affidavit establishing probable cause.  Cameron v. Craig, 713 F.3d 1012,

18

1018 (9th Cir. 2013).

Probable cause exists pursuant to the Fourth Amendment to the United States Constitution when, under the totality of the circumstances, a prudent officer would have believed that there was a fair probability that a suspect committed a crime or that contraband or evidence of a crime will be found in a particular place.  United States v. Collins, 427 F.3d 688, 691 (9th Cir. 2005); Gates, 462 U.S. at 214.

Probable cause is an objective standard.  United States v. Taylor, 60 F.4th 1233, 1240 (9th Cir. 2023).  Whether there is probable cause depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question.  United States v. Kelley, 482 F.3d 1047, 1050 (9th Cir. 2007).

### A.    The October 21, 2024 Application For A Search Warrant For The First Stop Was Supported By Probable Cause

Defendant Manago contends that the Court should suppress the evidence seized from the 2010 maroon Nissan Altima pursuant to the October 21, 2024 search warrant.  Defendant claims the Affidavit submitted in support of the search warrant does not establish probable cause.

In considering if probable cause exists, a magistrate judge may draw reasonable inferences about where evidence of a crime is likely to be found based on the types of evidence and type of

19

offense.  United States v. Fernandez, 388 F.3d 1199, 1253 (9th Cir. 2004).

A reviewing court may not "flyspeck the affidavit" and must give great deference to the issuing magistrate judge's decision. United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006). The magistrate judge may rely on the training and experience of the affiant police officers in issuing a search warrant.  United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002).

>    **1.    The Affidavit Set Forth Sufficient Facts To Establish Probable Cause To Search The 2010 Maroon Nissan Altima**

Here, the Affidavit set forth eleven separate facts in support of probable cause.  (Affidavit in Support of Search Warrant Dated October 21, 2024 at ¶¶ 12-22, Gov't Ex. 1).

The Affidavit provided the context and the facts supporting the First Traffic Stop conducted on Defendant Manago when he was operating the 2010 maroon Nissan Altima and failed to stop at a stop sign on October 2, 2024.  (Id. at ¶¶12-15).

The Affidavit explained that both the FBI and the Honolulu Police Department had been investigating Defendant Manago and Mr. Lagua for drug trafficking crimes.  (Id. at ¶ 12).  Defendant Manago's criminal history was detailed in the Affidavit, which included multiple prior felony convictions for Burglary, Drug Paraphernalia, and Promoting a Dangerous Drug.  (Id. at ¶12 n.1).

See United States v. Perkins, 850 F.3d 1109, 1120 (9th Cir. 2017) (explaining that a suspect's criminal history can be helpful in establishing probable cause).

Mr. Lagua's criminal history was also provided in the Affidavit. (Id. at ¶ 12 n.2). The Affidavit set forth the facts explaining that Officers recognized the passenger in the vehicle was Mr. Lagua, and that he was arrested for Theft in the Third Degree. (Id. at ¶ 16). The Affidavit explained how Mr. Lagua placed the black backpack on the passenger's seat with the front pocket zipped open which had visible Ziploc baggies containing a white and brown crystalline substance. (Id.)

The Affidavit included a photograph of the backpack with the Ziploc baggies and open pocket in plain view. (Id. at p. 13). The Affidavit explained to the Magistrate Judge that a search warrant was issued by the State of Hawaii for the black backpack and that methamphetamine and drug paraphernalia were recovered as a result of the execution of the State search warrant. (Id. at ¶¶ 17, 20).

Finally, the Affidavit included a statement that the officer observed "a glass pipe with crystalline substance within the pipe located in the center cup holder" which included a photograph of the officer's observations. (Id. at ¶ 18).

The totality of the circumstances as detailed in the Affidavit provided valid probable cause to issue the search

21

warrant in order to search the vehicle including the containers within it.  <u>Gates</u>, 462 U.S. at 238-39.

The combination of facts considered by the Magistrate Judge included the lawful arrests of Defendant Manago and Mr. Lagua, the criminal history of Defendant Manago and Mr. Lagua, and the plain view observations of Ziploc baggies containing drugs.  It also included the results of the search on October 4, 2024, of the black backpack that contained drugs, scales, and other drug paraphernalia.  The total evidence provided probable cause to issue the search warrant by the Magistrate Judge.  <u>Id.</u> at 236 (explaining that the duty of the reviewing court is simply to ensure that the magistrate judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing).

### 2.    Good Faith Reliance On The October 21, 2024 Search Warrant

The United State Supreme Court held in <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984) that evidence seized by police officers acting in good faith pursuant to a facially valid warrant would be admissible even if the warrant was subsequently found to lack probable cause.

The good faith exception does not apply if the officer's reliance on the warrant is per se unreasonable under four situations:

(1)  where an affiant misleads the issuing magistrate

22

by making a false statement or recklessly
disregarding the truth in making a statement;

(2)    where the magistrate wholly abandons his judicial
role in approving the warrant and acts only as a
rubber stamp to the application;

(3)    where the warrant is facially deficient in detail
as to the place to be searched or the things to be
found; or

(4)    where the affidavit upon which the warrant is
based is so lacking in indicia of probable cause
that no reasonable officer could rely in good
faith upon it.

See United States v. Crews, 502 F.3d 1130, 1136 (9th Cir. 2007).

Here, Defendant Manago argues that the Magistrate Judge was
misled by the Affidavit for the Search Warrant that was submitted
on October 21, 2024. Specifically, Defendant argues that the
Affidavit deceived the Magistrate Judge by stating that Officer
Botelho saw a glass pipe with drug residue inside the vehicle in
plain view as stated in Paragraph 18 of the Affidavit.
(Affidavit in Support of Search Warrant Dated October 21, 2024 at
¶¶ 12-22, Gov't Ex. 1).

Defendant contends there is no glass pipe in the photograph
submitted in support of the statement in the Affidavit.

Defendant Manago's argument has no basis. Officer Botelho
credibly testified at the October 23, 2025 hearing that he
observed the glass pipe in plain view in the "center console."
He explained the exact location of the glass pipe inside the
Altima as between the shifter of the car and below the air

23

conditioning controls.

The Affidavit states that the glass pipe was in the "cup holder" in the vehicle as found in paragraph 18 of the Affidavit. The term "cup holder" was used by Special Agent Margaret Blanton who was the affiant in the application for the search warrant and relayed the information from Officer Botelho.  The use of the term "cup holder" rather than "center console" appears to be a merely semantic inconsistency.  There can be no dispute that the glass pipe is clearly visible in the photograph contained in the Affidavit itself.  The glass pipe is in the same location in the photograph as was described by Officer Botelho during his testimony.  Officer Botelho electronically circled the area on the picture during his testimony before the Court.

There can be no dispute that the glass pipe with the methamphetamine residue inside the bulbous end is clearly visible in plain view in the photograph that was submitted to the Magistrate Judge.  The lack of clarity between the term "cup holder" and "center console" is not a falsehood or misleading statement that would invalidate the basis for probable cause presented to the Magistrate Judge.

This is not a case of a blatant falsehood or deception provided to the Magistrate Judge in order to secure a warrant.  Crews, 502 F.3d at 1136.  This is also not a case where the affiant provided information that was "so facially deficient" or

24

merely provided "conclusory" or "bare bones" allegations so lacking in indicia of probable cause.  See <u>United States v. Underwood</u>, 725 F.3d 1076, 1085 (9th Cir. 2013).

### 3.    The Lack Of Body Camera Evidence Does Not Alter The Analysis

Defendant also argues that Officer Botelho should have worn a body camera or presented live video footage of the traffic stop in order to demonstrate that the glass pipe was in plain view. Contrary to Defendant's argument, police officers "do not have an 'undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" <u>United States v. Igoe</u>, 2022 WL 796292, at *1 (9th Cir. Mar. 15, 2022).

Officer Botelho testified that because he was assigned to be in plain clothes as a member of the Crime Reduction Unit, he was not issued a body worn camera and there was no recording to provide to Defendant.  The police do not have a constitutional duty to use any particular investigatory tool, such as a body worn camera, to collect evidence.  <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988).  The lack of live recorded video does not provide a basis for suppression of the evidence recovered from the Altima.

**4.    The Totality Of The Circumstances Provided Valid Probable Cause And The Officers Properly Relied On The Warrant In Good Faith**

The October 21, 2024 application for a search warrant was supported by a detailed Affidavit that was not deficient.  The officers who executed the search warrant issued by the Magistrate Judge had the responsibility after obtaining the warrant to carry out the search.  Illinois v. Krull, 480 U.S. 340, 349 (1987). There is no basis to suppress the evidence recovered from the search of the Altima because there was no deficiency in the search warrant or the supporting search warrant affidavit that was so glaring that the officers could not reasonably rely on the warrant to conduct the search of the Altima.  Id.

The reliance by the officers on the October 21, 2024 search warrant issued by the Magistrate Judge was done in good faith and there is no basis to suppress the evidence obtained as a result of the search warrant.  United States v. Thompson, 2025 WL 711069, *5 (N.D. Cal. Mar. 5, 2025).

**5.    Officers Had Additional Bases To Search The Altima**

Even if there had been a defect in the October 21, 2024 search warrant, a defect in the warrant would not require suppression because the search of the Altima could have been conducted pursuant to numerous exceptions to the warrant requirement.  See United States v. Steinman,   F.4th  , 2025 WL

26

3180282, *17 (9th Cir. Mar. 5, 2025).

###### a.    Automobile Exception

The officers were alternatively entitled to search the
Altima based on the automobile exception to the Fourth Amendment.

The automobile exception to the Fourth Amendment allows an
officer to conduct a warrantless search of a vehicle stopped by
police officers who have probable cause to believe the vehicle
contains contraband.  United States v. Ross, 456 U.S. 798, 799
(1982).

Plain view observations of illegal drugs and drug
paraphernalia establish probable cause.  Texas v. Brown, 460 U.S.
730, 742-43 (1983).  Plain view observations do not violate the
Fourth Amendment because there is no legitimate expectation of
privacy shielding that portion of the interior of an automobile
which may be viewed from outside the vehicle "by either
inquisitive passersby or diligent police officers."  Id. at 740.

An officer's plain view observation of drug paraphernalia or
drug residue in a suspect's vehicle generally provides sufficient
independent probable cause to search a vehicle without a warrant.
See United States v. Fowlkes, 804 F.3d 954, 971 (9th Cir. 2015);
United States v. Gage, 423 F.Supp.3d 984, 989-90 (D. Idaho 2019)
(finding that under the automobile exception the officer had
probable cause to search the entire vehicle including the

27

backpack inside of it because the officer observed drugs and drug paraphernalia inside of it); <u>United States v. Garcia</u>, 468 Fed. Appx. 658, at *1 (9th Cir. 2011) (holding warrantless search was permissible under automobile exception when officer saw from outside of the defendant's car a clear baggy containing a crystalline substance in the car's center console).

The plain view of the illegal drugs in the black backpack and the glass pipe located in the center console provided probable cause for the officers to search the Altima.  <u>United States v. Collins</u>, 827 Fed. Appx. 721, 722-23 (9th Cir. 2020) (probable cause established when officers observed narcotics and a digital scale in plain view during traffic stop); <u>United States v. Ford</u>, 2025 WL 2308093, *6 (S.D. Cal. Aug. 11, 2025) (explaining that once the deputy saw the methamphetamine pipe when the defendant exited the vehicle, he had probable cause to search the vehicle).

### b.    Search Incident To Arrest

The officers also could have conducted the search of the Altima incident to the arrest of both Defendant Manago and Mr. Lagua.

Officers may conduct a warrantless vehicle search incident to a recent occupant's arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the

vehicle or when the arrestee is within reaching distance of the passenger compartment at the time of the search.  Arizona v. Gant, 556 U.S. 332, 335 (2009).

The incident-to-arrest exception also applies to vehicle searches that were conducted prior to the actual arrest so long as the arrest that follows the search is supported by probable cause independent of the fruits of the search.  United States v. Smith, 389 F.3d 944, 951 (9th Cir. 2004) (per curiam).

The search incident to arrest exception provided the officers with an alternative basis to conduct the search of the Altima as it was reasonable to believe there was evidence present in the vehicle that would have supported the prosecution of the offenses for which the Defendant and Mr. Lagua were arrested. United States v. Salas, 766 F.Supp.3d 1069, 1078 (S.D. Cal. 2025) (citing United States v. Evans, 445 Fed. Appx. 29, 31 (9th Cir. 2011) ("Once the officer found the pipe, noticed it had burn marks, and arrested [defendant] for possession of drug paraphernalia, the officer could lawfully search the car, including the passenger compartment, for additional contraband").

Defendant's Motion to Suppress seeking to exclude evidence recovered from the 2010 maroon Nissan Altima pursuant to the October 21, 2024 search warrant is **DENIED**.

**B.    The October 25, 2024 Application For A Search Warrant For The Second Stop Was Supported By Probable Cause**

Defendant Manago also seeks to suppress the evidence seized from the 2020 black Toyota Tacoma truck pursuant to the October 25, 2024 search warrant.  Defendant claims the Affidavit submitted in support of the search warrant does not establish probable cause.

**1.    The Affidavit Set Forth Sufficient Facts To Establish Probable Cause To Search The 2020 Black Toyota Tacoma Truck**

The October 25, 2024 Affidavit set forth fifteen separate facts in support of probable cause to search the 2020 black Toyota Tacoma truck driven by Defendant Manago.  (Affidavit in Support of Search Warrant Dated October 25, 2024 at ¶¶ 18-33, Gov't Ex. 5).

The Affidavit provided the context and the facts supporting the First Traffic Stop conducted on October 2, 2024, when Defendant Manago was operating the 2010 maroon Nissan Altima and failed to stop at a stop sign.  (Id. at ¶¶ 18-21).  The Affidavit explained that both the FBI and the Honolulu Police Department had been investigating Defendant Manago and Mr. Lagua for drug trafficking crimes.  (Id. at ¶ 18).  Defendant Manago's criminal history was detailed in the Affidavit, which included multiple prior felony convictions for Burglary, Drug Paraphernalia, and

30

Promoting a Dangerous Drug.  (Id. at ¶18 n.2).

Mr. Lagua's criminal history was also provided in the
Affidavit.  (Id. at ¶ 19 n.3).  The Affidavit set forth the facts
explaining that Mr. Lagua was arrested for Theft in the Third
Degree during the October 2, 2024 First Traffic Stop.  (Id. at ¶
22).  The Affidavit explained how Mr. Lagua placed the black
backpack on the passenger's seat with the front pocket zipped
open which had visible Ziploc baggies containing a white and
brown crystalline substance.  (Id.)

The Affidavit included a photograph of the backpack with the
Ziploc baggies and open pocket in plain view.  (Id. at p. 22-23).
The Affidavit explained to the Magistrate Judge that a search
warrant was issued by the State of Hawaii for the black backpack
and that methamphetamine and drug paraphernalia were recovered as
a result of the execution of the State search warrant.  (Id. at
¶¶ 23, 26).

The Affidavit included a statement that an officer also
observed a glass pipe with crystalline substance in the Altima,
which included a photograph of the officer's observations.  (Id.
at ¶ 24-25).

The Affidavit also provided details about the result of the
execution of the search warrant for the Nissan Altima that
recovered drugs, drug paraphernalia, identification documents for
Defendant Manago, and a firearm located in a brown Michael Kors

31

backpack.  (Id. at ¶¶ 28-29).

In addition, the Affidavit included the details from the October 24, 2024 Second Traffic Stop and subsequent arrest of Defendant Manago.  (Id. at ¶¶ 30-32).

The Affidavit explained that Defendant Manago was the sole passenger in the 2020 black Toyota Tacoma truck and that a traffic stop was conducted because the truck did not have a required safety sticker and the vehicle also had excessively dark tinted windows.  (Id. at ¶ 30).  The Affidavit stated that when Defendant exited the vehicle, the officer observed a glass pipe with a frost white residue within the pipe located on the front passenger seat.  (Id.)  A photograph of the glass pipe clearly visible on top of a unzipped bag is included in the Affidavit. (Id.)

The Affidavit further stated that Defendant Manago was arrested for both Promoting a Dangerous Drug in the Third Degree as a result of the pipe and for Criminal Contempt of Court pursuant to an outstanding warrant.  (Id. at ¶ 32).

The totality of the circumstances as detailed in the Affidavit provided valid probable cause to issue the search warrant in order to search the 2020 black Toyota Tacoma truck. Gates, 462 U.S. at 238-39.

The combination of facts included the October 2, 2024 First Traffic Stop and the searches as a result of the October 2, 2024

32

First Traffic Stop that recovered methamphetamine, drug paraphernalia, scales, and a firearm.  The Magistrate Judge also considered evidence that there was an outstanding warrant for Defendant Manago for criminal contempt of court, the Defendant's criminal history, and the plain view observation of the glass pipe.  In its totality, the evidence provided probable cause to issue the search warrant for the truck by the Magistrate Judge. Id. at 236.

### 2.    Good Faith Reliance On The October 25, 2024 Search Warrant

Here, Defendant Manago argues that the Magistrate Judge was misled by the Affidavit for the Search Warrant that was submitted on October 25, 2024.  Specifically, Defendant argues that the Affidavit deceived the Magistrate Judge by stating that Officer Chun saw a glass pipe with drug residue inside the vehicle in plain view as stated in Paragraph 30 of the Affidavit. (Affidavit in Support of Search Warrant Dated October 25, 2024 at ¶¶ 30, Gov't Ex. 5).  Defendant contends the glass pipe in the photograph submitted in support of the statement in the Affidavit was not visible to the officer through the driver's side door.

Police officers may lawfully require a driver to exit his vehicle during a traffic stop even though it exposes a portion of his person to view.  Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977).  Such an intrusion is de minimis because it exposes very

little than is already exposed.  Id.  Such an intrusion is justified because it enhances officer safety, prevents drivers from making unobserved movements, and reduces the likelihood that an officer will be the victim of an assault.  Id. at 110-111.

Once a vehicle has been lawfully detained for a traffic violation, the police officer may order the driver out of the vehicle without violating the Fourth Amendment.  Id.  Traffic stops are especially fraught with danger to police officers and an officer may need to take certain negligibly burdensome precautions in order to ensure safety.  Rodriguez v. United States, 575 U.S. 348, 356 (2015).  This is particularly true in this case where it was discovered that Defendant Manago possessed a loaded firearm in the vehicle that was previously subjected to a traffic stop less than a month earlier.  Ordering Defendant out of the truck did not violate Defendant Manago's rights and does not provide a basis to suppress evidence.  See United States v. Aguirre, 2024 WL 4434281, *5-*6 (D. Idaho Oct. 7, 2024) (finding no Fourth Amendment violation when officer opened driver's door and instructed him to exit the vehicle).

The Government explained that Officer Chun was able to see the glass pipe from four feet away from the vehicle given the interior lights were illuminated and that he stands at 6'4" and had enough height to see the glass pipe even though it was a lifted truck.  The photograph submitted with the Affidavit

34

clearly demonstrates that the glass pipe was in plain view.

The October 25, 2024 application for a search warrant was supported by a detailed Affidavit that was not deficient. There is no basis to suppress the evidence recovered from the search of the Tacoma truck because there was no deficiency in the search warrant or the supporting search warrant affidavit that the officers could not reasonably rely on the warrant. <u>Krull</u>, 480 U.S. at 349.

The reliance by the officers on the October 25, 2024 search warrant issued by the Magistrate Judge was done in good faith and there is no basis to suppress the evidence obtained as a result of the search warrant. <u>Thompson</u>, 2025 WL 711069, at *5.

Just as with the October 21, 2024 search warrant, even if there were defects in the October 25, 2024 search warrant, Officer Chun had probable cause to search the truck based on the automobile exception and the search incident-to-arrest exception. Officer Chun's plain view of the glass pipe with the white residue located in the front passenger seat provided probable cause to search the truck. <u>Salas</u>, 766 F.Supp.3d at 1078 (citing <u>Evans</u>, 445 Fed. Appx. at 31).

Defendant's Motion to Suppress seeking to exclude evidence recovered from the 2020 black Toyota Tacoma truck pursuant to the October 25, 2024 search warrant is **DENIED**.

35

**III. Defendant's Request For A <u>Franks</u> Hearing**

A defendant may challenge the veracity of an affidavit submitted in support of a search warrant pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).  There is a presumption of validity with respect to the affidavit supporting the search warrant.  <u>United States v. Meek</u>, 366 F.3d 705, 716 (9th Cir. 2004).  In order to be entitled to an evidentiary hearing to attack the validity of the affidavit under <u>Franks</u>, the defendant must make a substantial preliminary showing that:

> (1)  the affiant agent intentionally or recklessly made false or misleading statements or intentionally omitted facts; and

> (2)  the false or misleading statements or omissions were material, that is, were necessary to the finding of probable cause.

<u>United States v. Nault</u>, 41 F.4th 1073, 1080-81 (9th Cir. 2022).

A defendant must present specific allegations of falsehood or reckless disregard for the truth supported by a sufficient offer of proof to be entitled to a <u>Franks</u> hearing.  <u>United States v. Kiser</u>, 716 F.2d 1268, 1271 (9th Cir. 1983).

Here, Defendant Manago has not made a substantial showing of any false statement in the affidavits.  As explained above, Officer Botelho credibly testified that he observed the glass pipe in plain view in the center console of the Nissan Altima driven by Defendant Manago at the First Stop on October 2, 2024. In addition, the Government set forth that Officer Chun was able

36

to observe the glass pipe in plain view on the passenger's seat
of the Toyota Tacoma truck driven by Defendant Manago at the
Second Stop on October 24, 2024.

Defendant has not provided any offer of proof that would
entitle him to a <u>Franks</u> hearing.

Defendant's request for a <u>Franks</u> hearing is **DENIED.**

<u>**CONCLUSION**</u>

Defendant Manago's Motion to Suppress and Request for a
<u>Franks</u> Hearing (ECF No. 40) is **DENIED.**

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 1, 2025.



Helen Gillmor
United States District Judge

<u>United States of America v. Douglas Neddles Keikila Junior
Manago</u>, CR. No. 24-00078 HG-01; **ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS AND REQUEST FOR A <u>FRANKS</u> HEARING (ECF No. 40)**